[Civ. No. 26442. Second Dist., Div. Three. July 31, 1963.]

STUDIO FILM SERVICE, INC., Plaintiff and Respondent, v. FILMERCIAL PRODUCTIONS, INC., Defendant and Appellant.

Enger & Yardum and Clifford E. Enger for Defendant and Appellant.

Olson & Markey and Lester E. Olson for Plaintiff and Respondent.

FILES, This is an action for a balance alleged to be due under a written contract relating to the termination of a joint venture. Defendant has appealed from the judgment after a court trial. We have concluded that the judgment must be reversed because the trial court erroneously concluded that this agreement was unambiguous and refused to allow defendant to introduce evidence to aid in its interpretation.

In 1957 plaintiff and defendant, both of whom are corporations, entered into a written agreement whereby they associated themselves in a joint venture to produce television film commercials. At that time both parties had available certain equipment, manpower and facilities which would be useful in that business. The agreement provided that each party would initially contribute capital in an unspecified amount, and in addition to the capital contribution each party would furnish to the joint venture such talents, manpower, equipment and facilities as were available and needed for the activities of the joint venture. Such facilities, etc., were to be furnished at cost. Paragraph 8 of the agreement stated: "The Joint Venture shall bill the customer and receive the proceeds for any service performed or product sold by the Joint Venture and shall thereupon pay, to the extent funds are available therefrom, to each of the parties hereto the expenses, costs or charges which have been incurred by each. . . . In the event such funds are not available to repay the expenses, costs or charges of each party with re-

spect to a given project, then such funds as are available shall be paid to the parties in the ratio such expenses bear to the sums so available.''

After a period of operation the parties entered into a written agreement to terminate the venture as of May 31, 1958. It was agreed that after that date defendant was to own all of the property of the joint venture. Paragraph 3 of the termination agreement stated: ''You [defendant] agree to undertake to pay all outstanding bills of the joint venture whether such bills are owed to us [plaintiff] or to others and we shall have no liability or obligation with respect to any obligation of the joint venture.''

Following the execution of this agreement it was ascertained that the receipts of the joint venture were not sufficient to reimburse plaintiff for all of the facilities which it had furnished. The record does not disclose whether this condition was known or anticipated by the parties when they agreed to terminate. It is undisputed that the amount of plaintiff's unreimbursed expenses is $4,530.13, and that plaintiff's pro rata share of the funds on hand is $1,040.31.

It is plaintiff's theory that paragraph 3 of the termination agreement means that defendant must pay the entire amount of plaintiff's unreimbursed expenses. That is, the phrase ''all outstanding bills of the joint venture . . . owed to us'' means all of the bills properly submitted by plaintiff for facilities furnished.

It is defendant's theory that the words ''owed to us'' must be read in the light of paragraph 8 of the joint venture agreement, which provides that the bills submitted by the parties shall be paid only to the extent that funds are available. Defendant's interpretation is that if the receipts of the joint venture were insufficient, the amount was not ''owed'' to plaintiff.

At the trial plaintiff called as a witness Louis DeWitt, one of the owners of plaintiff corporation. He testified that in the termination of the joint venture defendant received a film projector and ''several active accounts,'' meaning that after dissolution defendant did business with several customers who had been doing business with the joint venture. On cross-examination Mr. DeWitt was asked: ''At the time the Joint Venture Termination Agreement was entered into, did you have any discussions with Mr. Chapon or Mr. Stabler [representatives of defendant] as to the inter-

pretations and meanings of the agreement?'' An objection to this question was sustained. When defendant's counsel protested, the court said: ''Very well. Make an offer of proof. I will sustain an objection to any conversations relating to Plaintiff's 2 [the termination agreement] on the ground that it is a document which does not need testimony as to parol evidence for its interpretation.'' Counsel then made a statement which was partly argument and partly offer of proof, after which the court stated that ''with respect to this witness, the objection should properly be sustained because it goes beyond the scope of the direct.''

The witness was excused and plaintiff rested.

Defendant's counsel then announced that he would like to make an offer of proof. He said he would like to call certain officers and employees of the respective parties to show conversations relating to the meaning of the agreement. After some colloquy the court said: ''Very well. I will deny the motion—the offer of proof. I will exclude the evidence on that issue on the theory that I previously expressed, that I think the documents speak for themselves and do not need the assistance of parol evidence.''

Defendant's counsel stated he had nothing further to offer. The court thereupon announced its decision in favor of plaintiff in the amount of $4,530.13.

It is settled law that when a written agreement contains words which are fairly susceptible of more than one interpretation, evidence may be received to aid the court to interpret the words in the sense which the parties themselves intended. Conversations between the parties when the agreement was negotiated may be received for this purpose. (*Weinstein* v. *Moers*, 207 Cal. 534, 539 [279 P. 444]; Rest., Contracts, § 242.)

Defendant's offer of proof, though lacking in particulars, was sufficient to inform the court of the type of testimony which defendant proposed to elicit through witnesses who were then available. ''Where an entire class of evidence has been declared inadmissible or the trial court has clearly intimated it will receive no evidence of a particular class or upon a particular issue, an offer of proof is not a prerequisite to raising the question on appeal and an offer, if made, may be broad and general.'' (*Beneficial etc. Ins. Co.* v. *Kurt Hitke & Co.*, 46 Cal.2d 517, 522 [297 P.2d 428].)

The words of the agreement calling for payment of bills "owed" could mean all bills rightfully incurred, as plaintiff contends. It is also conceivable that those words could have been used to mean bills "owed" in the limited sense set forth in paragraph 8 of the joint venture agreement: that is, owed only to the extent that receipts were available. If the former meaning was intended, defendant was, in effect, buying out the business in consideration of its promise to see that all of plaintiff's advances were made good. If defendant's interpretation is correct, the cash receipts were being divided in accordance with the terms of the joint venture and defendant was left in possession of whatever assets and good will remained. Plaintiff put on evidence that defendant had received a film projector and some valuable accounts. This extrinsic evidence was doubtless offered to bolster plaintiff's theory that defendant was obligated to do more than merely divide the cash on hand. But defendant was entitled to an opportunity to prove circumstances indicating a different intention. Since the case must be retried, we intend no intimation as to which interpretation appears the more reasonable on this record. This determination should be made in the first instance by a trial court after it has heard all of the competent evidence offered on that issue.

The judgment is reversed.

Shinn, P. J., and Ford, J., concurred.